I'd like to begin, as I did yesterday and I'll also do again tomorrow, for thanking Chief Judge Gregory Sleet for allowing us to use his courtroom. It's much appreciated. This is the first time, yesterday was the first time that we got sat in the, in this, in Wilmington in the last seven years. Excuse me, I don't wish the audience to consider my laughing has anything to do with the seriousness of the cases before. I'm sure she wants to sit with us today. Well, she was here seven years ago. I can't move this chair. There we go. Don't turn around, especially unless you're upset with them. Yeah. There we go. Thank you. Yeah, I got it. Thank you. I have to be nice to her because she hired me many years ago. Also, I'd like to welcome the students today from the University School of Law, the persons in Justice Walsh's delegation class. And we'll begin with the first of four cases today. Metropolitan Edison Company et al., the Pennsylvania Public Utility Commission, number 13-4288. Mr. Shepard and Ms. Stieska. Good morning, Your Honor, and may it please the court, John Shepard for the Utilities Metropolitan Edison Company and Pennsylvania Electric Company. I'd like to reserve three minutes for rebuttal, please. When I read through the briefs and whatnot, the thing that jumped out at me was with regard to congestion costs a few years ago, you litigated that as you had done this matter with regard to line losses. You won. What's different then from now as to why you're claiming that the judgment against you shouldn't stand even though that's what you litigated in state court? Perhaps I misunderstood your question. When you asked what was different then from now, I thought you were going somewhere else. Well, you litigated a few years ago on congestion losses, right? That's right, Your Honor. And you won. Yes, Your Honor. And where did you litigate it? In Commonwealth Court, Your Honor. And you litigated line losses in Commonwealth Court? Yes, Your Honor, in order to complete the legislative process. That's correct. Okay, so you won on that and you lost on this, but now that you lose, you claim somehow that the state shouldn't be involved and it should be nothing but FERC. That's correct. The application of the Fault Rate Doctrine, as the Supreme Court has observed many times, is harsh. Maislin Industries is one of the better examples of the court talking about that. When one raises a Fault Rate Doctrine claim, and there are a number of things the Fault Rate Doctrine stands for, but one of its many Janus-like faces is that when you are making a claim that a court lacks subject matter jurisdiction under the Fault Rate Doctrine, you're saying that your only option is to send it back to FERC, period. Your position is really a head-side-win-tails-you-lose position. We get to go to the Commonwealth Court and it's got jurisdiction when we win, but we get to go to the Commonwealth Court and say it doesn't have jurisdiction if we lose. Well, that was the characterization that the opposing side put in their briefs. It is a harsh conclusion, but it's accurate. Are you claiming complete preemption? We are claiming field preemption and we are claiming conflict preemption, and together they add up to complete preemption. There is perhaps less of an obvious complete preemption as, say, under the 1996 Telecommunications Act, where Congress reached out and said all appeals from state PUC decisions related to ILACs go straight to district courts. They just directly divested state intermediate courts or any state court from jurisdiction, but that is simply one of many ways that Congress can do that. We've repeatedly cited throughout this proceeding the Bell Atlantic decision, which talks about the complete preemption in that particular instance and cites McCarter v. Mitchum, an earlier RICO case. And this court has held several times, and they've held that it is the law of Pennsylvania, if you'll excuse me for reading from the decision. It is also true that under Pennsylvania law, and this is a quote, if federal jurisdiction is exclusive, the state decision cannot act as a bar to litigation in federal court. So is your position on this issue, leave aside your previously having litigated the congestion point, on this specific issue, you're the one who chose to go to the Commonwealth Court in response to the ruling you got from the PUC. There's nothing preventing you from going to FERC and saying, these guys are crazy. They were running contrary to you there with their ruling about this not being a transmission line loss, was there? There was nothing preventing us from going to FERC except the pointlessness of the act. FERC had already declared in completely unambiguous terms in this case and in numerous prior cases what its position was. When you say the pointlessness of the act, if you had gone to FERC and you had gotten a ruling that the PUC position was wrong, could you not have taken that forward and enforced it in some fashion? It would have made this case look more like Southern Union, because that was the fact pattern in Southern Union. Yeah, hold on. It would. But you didn't do that. Are we not to draw some inference from that? Did you place preemption before the PUC and before the Commonwealth Court on the issue of line loss? Yes. The file rate doctrine was argued. So all the time you were saying, hey, look guys, you can't decide this. You can't decide this. And this is different than saying, please interpret a federal statute. We're not asking for their legal opinion. We're saying, you do not have jurisdiction to decide this at all. But you went to the Commonwealth Court. Yes, you went to the Commonwealth Court in order to complete the legislative process. If it's legislated. Now, actually, one could make a very good argument this is just a judicial proceeding. It looks back. It looks back at the competition agreement of 1996. It looks back at the settlement agreement of 1998. In order to generate a rule going forward. This is the Commonwealth Courts? Well, in that respect, I guess your argument is that every action of a court that has precedential effect is really legislative. When the courts make rulings and decide the rights and the obligations of parties before them, they set precedents which bind later courts. That's forward looking. Are you suggesting that because something can have future effects, it's by definition legislative? No, I'm not saying because it can have future effects. Because any adjudication is going to have some effect in the future ordering of the parties. This is a decision about a rule, a new rule, a legislative rule that is going to affect the rule. It's an interpretation of a rule. Courts do that all the time. That's what we are. Constantly. Let me get the sequence. You file a petition or whatever with the PUC saying we want to increase our rates to include line laws. We have to. We just needed them to come up with the methodology. And that is the normal routine of how you proceed when you want to make such a request. Yes, but we're not asking for their permission. We're saying FERC has directed this process. You're saying in connection with this that FERC has defined line laws and you can't redefine them. Absolutely. And you're saying that this is the state's determination and this is preemptive. The state is not allowed to reconsider FERC's classification of transition line laws. And you're moving them before the PUC. So the normal procedure then is to go to the Commonwealth Court. The normal procedure is to go to the Commonwealth Court because this is a legislative review state so far as we can tell. And if you would please indulge me in reading briefly from NOPSI when it discusses Prentiss. Let me do my timeline. Yes, Your Honor. So you go to the Commonwealth Court and you say to them, the PUC decided this line law issue incorrectly because they cannot. That is precluded. They are preempted from deciding that. That's something that only FERC can decide. Only FERC can do that. And we want you to correct this error, the PUC. Is that a correct summary of what you did? Well, the error correction was to say that they're not allowed to actually issue this ruling at all, consistent with what you just ruled a year ago in the congestion case, which says, well, this is a pretty broad statute. Transmission costs are defined as anything other relating to the delivery of electricity to someone over a transmission line. That is an incredibly broad statute. That's how they defined it, and they applied it that way. The only difference here is that we had a political recomposition of the commission, and their point of view changed. And it went 3-2 the other way this time. There was a very powerful dissent from now Chairman Powellson explaining that this position that the commission had taken was not only a complete reversal from its position the previous year, but absolutely contrary to what FERC had held in Order 888B in a situation where it had to decide the question whether or not transmission line losses were generation or transmission costs because it is completely determinative of whether or not you get paid one way or another under PROBA. So they had to decide that and preemption services. Can you waive preemption now? I do not believe that anyone can waive preemption, Your Honor, now. And I believe you have so held. I believe perhaps an MCI. I'm not entirely sure about that, but perhaps one of your clerks can look. Look, let's go back to the... If it's a judicial proceeding that you are involved with, then you don't do well on this issue. If it's a legislative proceeding, then you do well. If it's a judicial proceeding and there's preemption, they do fine. Correct. But the point is that you're saying that the PUC did a legislative proceeding... I don't think anyone doubts that what the PUC did is a legislative action. How could it possibly be legislative proceeding if the generation rate cap expired in 2010, six months before the commonwealth court decision? Well, Your Honor, this is an often misunderstood application of the rule against retroactive rate making. The act of filing is the point at which you begin to look forward. Everyone is aware that regulatory lag, as a result of regulatory lag, you end up having to look. You end up later deciding what rule should have been in effect at the time, which is why, for example, if you look at the federal statute under 205 and under the Pennsylvania statute, what you do is you decide that you're going to accept a rate for filing subject to refund, and then at the end conclusion of the process, which ends actually when the D.C. Circuit or whichever court of appeals hears it and has spoken, then and only then do you actually know what the result is going to be. In effect, aren't you asking us to overrule our 1988 decision in Kentucky-West Virginia gas? No, absolutely not. That was a real factual decision, and it was something the states were allowed to do. Basically what it says is the Pennsylvania Public Utility Commission rate proceeding is judicial in nature. No, it did not say that, Your Honor. It did not say that? What it said is when the PUC is acting in a judicial capacity as it was there, because it was decided in real question of fact, namely, is there other two options, both of which are FERC-approved? How is it not a question of fact how you've treated things? Is that a matter of historical fact? Because the argument is made to us that your clients themselves treated these things as generation costs in the past. I've seen that argument. We've rebutted it several times. The district court didn't choose to discuss it. We did not have the terrain in our briefing to cover it. But that is a very wrongheaded claim. But it is a question of fact, is it not? Wouldn't historically, whether you did that or you didn't do that, be a question of fact? That, yes, Your Honor, that would be a question of fact. But it is a question of fact that here is controlled by it, no matter what the fact had been. Let's assume that, and I absolutely contest the notion that there was ever any evidence of that. I think that by acknowledging it's factual, you're accepting the assertion. But it wouldn't matter, because FERC has held as a matter of law what these things are. So no one gets to call that a question of fact. Well, when you say they've held as a matter of law what these things are, I mean, that's the question. Transmission losses. Right. We're talking, now the question is, are these transmission losses? Not are transmission losses subject to a certain rate or not, but are these things that you're fighting about transmission losses or are they generation losses? And that seems to be a factual, or at least the PUC started talking about facts in regard to that and asking specifically, well, how did you treat it historically? If we let you do this and claim a rate increase, will you get double recovery because you've already recovered some of it in your generation loss? I mean, those were issues that the PUC raised, right? They were issues raised before the PUC, not, I don't believe, by the PUC. But it really wouldn't make any difference. The question is, has FERC spoken on this subject? I do not think FERC could possibly have been clearer on this point. Well, they could have been because you could have gone and gotten a ruling, right? And then it would have been perfectly clear. Well, we could have gone and paid the fee to get the declaratory judgment on the short, but we already had one, Your Honor. We already had one. There was no doubt starting in 1979, moving forward, maybe it was 1980, there's been a rule on transition cost allocation. Nineteen, I'm sorry, go ahead. Was that order 35, I believe? Very early. It's still in the regs. And FERC has held this specifically in 1993 with regard to what Pennilex transmission losses are. It had to be decided in Order 888. It was decided in the Transmission Pricing Policy in 1993. This is crystal clear. So this, the line, the quick line in Atlantic City saying, hey, we've already held that marginal line losses are the cause of transmission, that was built on a mountain of precedent deciding that was true. Moreover, look at what's happened subsequently in federal courts. There is no way that FERC could have in the Black Coat decisions come to its decision that it did. Those were all issued before the 2010 decision here. There's no way the D.C. Circuit could have come to its conclusion in Black Coat either unless it were the truth that transmission line losses are transmission costs. The whole point of that case is to say, generators, you get no surplus because you don't take transmission service. Therefore, when we switch from average to marginal, you can't have anything back. So I just don't think that there's any room for debate about whether or not FERC had spoken clearly about that and it was a fruitless act. We do know what FERC would say if you asked them for a brief on the subject, which is why we invited you to ask them for their opinion as you just did in the Solomon case, which is pending before a different panel right now and was argued two Thursdays ago. But FERC does not get involved in appellate cases unless the court asks them to do that. Is there anything preventing you from going to FERC at this point? We have discussed the possibility of filing a Section 205 to say, we have tried everything on earth we can do. We have gone to the state, we have gone to the state, we've tried to go to the state Supreme Court, federal Supreme Court, we've tried to go to federal district court, and have you exhausted everything on earth to say, FERC, give us a 205 rule and it just gives us everything back. But that is really a nuclear option. But on this one, you went, you lost in the Commonwealth Court, you asked the Pennsylvania Supreme Court to take it and they did not. You then applied for cert, is that correct? That's correct. And it was denied. Yes, two layers of discretionary review. But not saying you decided it wrong, not saying the PUC decided it wrong, saying the PUC could not have decided it in the first place. Exactly, Your Honor. Thank you for clarifying the distinction. There is a point about this legislation. Why don't you do what the plaintiffs did in Kentucky-West Virginia gas, which is withdraw those issues that you think are preempted and presented to the district court. Well, Your Honor, our understanding is that the proper thing, first of all, there was a question of fact there that was not at issue here. Here we have a legislative proceeding about how we're going to treat line losses and how we're going to construe the transmission definition in the state act. The legislative process was not complete until the Commonwealth Court issued its decision. I've been wanting to read you this excerpt from Anopsy, which please let me do. Why don't you just tell us what page it's on in Anopsy. It is on Anopsy 491 U.S. 372. And what it explains is that when it's talking about Younger, it's explaining that the reason why Prentiss was decided as it was, and it was a whiteness case, they said we're not going to take this case because the legislative process is not finished yet. And it concludes with the observation that if, in fact, Louisiana's judicial review of rapemaking was legislated by the new judicial nature, the Anopsy's challenge to the council's order should have been dismissed as unright. And there's a concurrence at the end where Justice Blackmun points out that this case would have been decided very differently, the Anopsy case would have been decided very differently on Burford grounds, if, as Pennsylvania does, there was a specialized court, the Commonwealth Court, whose sole purpose was to entertain students of Burford. There's what, where federal courts abstain because to get involved in state interests, it would be unreasonable interference with state policy. That's correct. Your Honor, I realize that I'm over time, but we have two other major issues I would at least like to mention so that I will not be forbidden from talking about them in rebuttal. And they are, first, well, second of the three reasons that it is crystal clear under this court's jurisprudence and the Supreme Court's jurisprudence that issue preclusion cannot apply when there is a difference in burden. I don't think that the other side has even shown up on this subject. It is the cleanest way to resolve this case because it doesn't involve weighty issues of preclusion. It doesn't require this court to address the other complicated questions. I always thought preclusion was a very clear issue to myself. I'm sorry, Your Honor? I always thought preclusion and preemption was a very clear issue, but maybe it's not so clear. I think they are, too. What I meant is that the clearest way to address, the least cluttered way from the standpoint of jurisdictional overlaps, if you're interested in judicial restraint, the easiest way to resolve this case is on the difference in burden exception because that is straightforward, limited to this case. It doesn't require you to make a rule for all time. That's not so for example. You're suggesting that the Commonwealth Court mixed and matched incorrectly with regard to? The Commonwealth Court definitely mixed and matched incorrectly. And I do not understand what the, all due respect to his Honor, but the district court's opinion construing the Commonwealth Court as having somehow decided this is a question of law, not tied to a question of fact, it was just wrong. Every single instance where the court was talking about the thought-rape doctrine, it said, I'm denying your thought-rape doctrine claims. Why? Because all you're doing is contesting the factual determination the PUC made, and I have to defer to the PUC's determination. All right, now accept for a moment that that's true, that the district court thought they were dealing with a fact question, that the Commonwealth Court thought it was dealing with a fact question, and that all those judges were hopelessly confused. Assume that's accurate for the sake of discussion. Your opponents say your burden of proof argument is faulty because you are conflating the question of burden of proof with the question of judicial standards of review. There may be different standards of review, but the burdens of proof are not different, and that's something that you haven't come to grips with once you respond to that. I did not even understand that argument when I read it. I mean, I know when I'm contesting a fork order and I go to the Court of Appeals that I'm facing arbitrary and capricious review, and I know that that is a really low bar. Your Honor, it was just in the panel in the NJDPU decision, and the court could not have emphasized more how low the arbitrary and capricious standard is versus here, a de novo question, where there's absolutely zero need of deference to the state's interpretation because this is, after all, a question of federal law. Okay. Then you are, let me, you know, they'll speak for themselves, but I understand their argument to be nobody's questioning who had the burden of proof on this in the commission. Nobody's questioning who had the burden and what the character of the burden was that they had to carry. What they're questioning is the judicial standard of review that's applicable as compared between questions of fact and questions of law. So this isn't like differing standards or different burdens of proof, as in a civil case versus a criminal case, where the burden of proof is different. It's proof beyond a reasonable doubt in a criminal case, and it's proof by a preponderance in a civil case. That's a genuine difference in the burden of proof. The burden of proof here is not altered. What is altered is the standard of review, whether it's a fact question or a law question. Now, maybe I got it wrong, and they'll straighten me out, but that's how I understood their argument, and that's what I'm trying to get your response to. I know that's what we say, Your Honors. Who has the burden? Okay. It sounds like everyone agrees who had the burden. What the issue of reclusion exception and restate in Section 24 is about is about... You have the burden, right? We have the burden. Either way, we have the burden, but on a question of law, considered de novo in a federal district court, we have de novo review. I don't know how the Commonwealth Court could have been more clear... As the questions of law, you have de novo review. As the questions of fact, you have de facto. And, Your Honor, there's a deeper problem with that, and that is that the states, the state of Pennsylvania and all states, I think, have their own version of Chevron deference. Even if it were a question of law, they would still defer to the PUC's interpretation. So how is that a burden of proof? How do you get to ride the precedence on differing burdens of proof on a horse called judicial review or standards of review instead of burden of proof? How does that work? I am not aware of any way to distinguish the standard of review  How does it speak to the burden of proof? Well, Your Honor, if in one proceeding I have to show preponderance of evidence, I, and in another proceeding the only thing I have to do is show, as this Court has described in numerous courts, and described to describe the overtraded substantial evidence standard, it is more than a scintilla and less than a preponderance. So there's your burdens, right? They're all in the preponderance mark. Where it is overtrained capricious, anywhere south of here, as long as it's above a scintilla. Isn't the second thing that you just talked about really the standard of review as opposed to a burden of proof before the initial agency? It is definitely a standard of review, and I don't understand how to distinguish between the two. How do you separate that from the question of burden of proof? Well, if the agency has made a factual finding, then you look to substantial evidence. If the agency has made a legal conclusion, then it's a standard of review on appeal. That's a standard of review. Well, again, Your Honor, I don't think that a PUC can decide to turn a question of federal law into a question of state fact. But if they do, there was no doubt that the Commonwealth Court, which said numerous times at JA 176, 177, 179, 196, I think like 12 times, they emphasized how many times they were giving great deference to the factual determination of the PUC. How on earth that can be considered a less weighty burden for the PUC when we brought our appeal than we would have in federal court? I don't know how to articulate it any other way. Why don't you go to your third point before we switch sides? All right. And one final shred on that. Again, the state has its own Chevron deference doctrine, so even for more question of law, see the congestion cost decision citing Pennsylvania Power Company versus Pennsylvania Public Utility Commission 932, a second 300. All right. Finally, were the proceedings legislative rather than judicial? As we have repeatedly indicated, if anyone is in possession of data or should have some sort of precedent saying that judicial review of rate-making orders by the PUC is legislative, it's them, not us. The burden was definitely not ours, and the district court tried to put it on us for some reason. Well, I don't think you have to worry about preserving that issue for rebuttal. You've covered it. Roger. If the panel has no further questions about any of the matters not addressed in the district court proceeding, which were briefed and argued, I'll get you back a rebuttal. Thanks. Thank you. Ms. Stajewska. Good morning, Your Honors. May it please the court. My name is Espatia Stajewska on behalf of the Pennsylvania Public Utility Commission. Did I press anything? You must have pressed something. I know I didn't. Well, that's okay. You can keep going. We'll blame the mic the next time. With me at the council table are Buck Penkel, Chief Counsel, and Kenneth Stark, Assistant Counsel. Your Honors, we heard a lot about preemption today, but we believe that this case presents one operative fact and one legal principle that allow this court to dispose of the entire appeal. Can you just explain to me one matter, just a factual matter? How are line losses generation related? Line losses are generation related because they represent the loss of energy, the loss of electricity during the delivery process of that electricity, and they're, again, being replaced by the purchase of more electricity. That's good. Doesn't that prove too much? If that's true, then everything's a generation loss, right? Anytime you lose anything, you'll have to make it up with something. So if that's the way you approach it, then the whole world is a generation loss, isn't it? Not necessarily. How not? Explain how that can't be so. How does your argument not prove too much? Well, it doesn't because this is just one of the actual determinations that the commission made. But it's really based on the settlement agreement and the evidence that was presented by the customers who are interveners in this case about the line losses and whether they were built. I'm confused, Ms. Stajewska. How can the question, well, maybe I should put it this way. Is this a question of fact or a question of law? It's absolutely a question of fact interpreting the settlement agreement and the testimony. Has FERC ruled on whether line loss is a transmission loss? We disagree with the company's argument that FERC has ruled on this issue. Let me give you a hypothetical. FERC has ruled that line loss is a transmission loss. Is the Pennsylvania court system preempted then from redefining whether transmission loss is generation loss or whether line loss is transmission loss? Assuming that FERC has ruled, and that's a contention that we disagree with, but assuming that FERC has ruled on the actual classification, it would not have ruled on how line losses are being classified under retail rate design, which is subject to jurisdiction of the state commissions. But don't the states have to take what is defined as wholesale loss by FERC and incorporate in the retail loss they charge and then put on whatever further charges they may want? But in taking what FERC has defined in wholesale charges as line loss, aren't the states precluded from redefining or reducing that amount? The states are precluded from reducing the amount. They are not precluded from deciding in which, let's say, bucket they will allow the amount. So you're saying if FERC has ruled that this is line loss, the states can still say this is generation loss? Yes. In fact, today the companies are fully recovering line losses in their generation charge. They're not complaining about that because they're receiving full recovery. I'm just talking about what FERC, you're saying, in spite of the fact that FERC defines line loss as a transmission loss in wholesale rates, in spite of the fact that they said that, the state of Pennsylvania in determining retail rates can ignore that definition. Yes, it can decide. They cannot transport the wholesale cost as transmission cost into the retail rates. They cannot track costs absent an agreement to the contrary. But they can decide where they're going to allow that cost, whether it be in the generation charge, the transmission charge, or the distribution charge. How can you make that argument in light of Nantahala? That's very puzzling to me. I didn't think you'd have to go there, and I'm surprised that you have. How can you say in the face of Nantahala saying, hey, state, you don't get to tell FERC it's wrong. So if FERC has defined this, if it has defined it as transmission loss, how can, in the face of the Supreme Court's specific commentary on Nantahala, how can you say, oh, yes, we can? Nantahala dealt with actual review, state commission review, and second-guessing of the actual rate approved by FERC, not with the classification with the rate. So Nantahala presented a situation where entitlement power was being trapped by state commission. Here we have a situation where, one, we have a settlement agreement that decided how line losses are going to be allocated, whether in the generation or the transmission bucket. Well, you cite that in your brief, but in looking at your cites, I do not find anywhere in the settlement agreement where there was any express determination that line loss would be considered as generation loss. And when I read the dissent of Mr. Powelson, he specifically says that line loss was not considered as a generation loss in the settlement agreement. Well, you're right, Judge Roth, that the settlement agreement does not define the terms transmission and generation charges, and everybody agrees, including appellants here, that the definition is pursuant to the Commonwealth Selective Competition Act, which is why the settlement agreement was entered into to begin with. However, the settlement agreement contains work schedules and appendices that are added to it, and so the parties had to present evidence pursuant to the restructuring agreement to show where line losses were built. And that's exactly what the customers did in this case. Talking about burden of proof, the companies had the burden of proof to show that line losses were actually a transmission charge under the settlement agreement. Let's step back from the settlement agreement, which you clearly have things to say about and said a lot about in your briefing, and for a moment stick with the assertion that we're receiving from your opponents that the categorization of these kinds of losses is something that FERC is entitled to do, and if FERC does it, then the states can't override it. Why don't you take that on directly? Is that an accurate or an inaccurate statement of law, that the categorization of line losses as either a transmission loss or a generation loss is a question of interpretation which FERC is entitled to have an exclusive say on? We agree that that's correct with respect to wholesale generation costs and interstate transmission costs. It is not correct with respect to the retail allocation of such costs. And I'm not talking about the cost of that. And you think that because it becomes retail, that that means that the state can say, FERC, you're wrong. That's your legal position. FERC has agreed with that position in the two cases we cite on page 34 of our brief, the VEPCO and Exelon cases. Issues of retail rate design and cost allocations are issues that are for the state commission determination. Even if what the state says is 180 degrees contrary to what FERC says your position is, by calling it a state retail issue, you get to override FERC. We're not overriding FERC because we're not ruling on FERC's classification with respect to the tariff that they approve. We're only limiting our classification with respect to the state tariff. Now, if that's true, if that's true, then can't states always go ahead and engage in the trapping that Nantahala and other cases say they can't do simply by saying we're calling this something else? You may call it that, but in the retail market we're putting a different label on it. That would always, would it not, allow state public utility commissions to override FERC by redefining what they call, what FERC had called something? You may say that that's a leg, I call it a tail. Well, you know, I think you would be correct, but there's one very important fact that you're not taking into consideration here, and that's the settlement agreement where the companies agreed for recovering $1 billion of stranded costs to forego increases in retail. If you go to the settlement agreement, ma'am, then you leave the realm I'm trying to keep you in for a minute, which is just as a matter of power, and I don't mean electric power. I mean power to say what isn't isn't going to be enforced. FERC has certain powers. The state has certain powers. Leave the settlement agreement out of it. If I understand you right, you're saying Nantahala notwithstanding, once something enters the realm of the retail market, you think you get to say, FERC, it doesn't matter what you call it, we're calling it something different and treating it different. That's the position you're presenting. We're treating it something different. We cannot say we're going to trap costs and not allow you to recover FERC-approved costs. But we can decide, even if FERC treats it differently, we can decide we're going to put it in a different bucket. And that's exactly what's happening today, even after the expiration of the settlement agreement. I am a little surprised. I thought from your briefing that the position you folks were taking was FERC hasn't decided this. So we don't really have a conflict. So I'm puzzled by your embracing a conflict. We're not embracing the conflict because our position on what FERC has spoken with respect to the Atlantic City decisions or the other decisions is our position is that FERC has not clearly ruled on the classification of line losses. So we don't believe that there is a conflict. Let me ask this question, then. If FERC were to now issue an order that line loss costs are transmission costs, would that affect this case? No, because we have a settlement agreement and we have findings of fact supported by substantial evidence that show where line losses were billed. Line losses were billed in the generation charge. The companies failed to meet their burden of proof and show otherwise. And so because they agreed to forego increases in retail rates, whether those be state-approved or federally approved, they have in fact waived their ability to seek additional increases, even if FERC were to say that this is actually a test. What do you say to Commissioner Powelson's statement in his dissent? A review of this evidence, however, reveals no substantiation for the claim that the companies are or were recovering line losses in generation rates. We disagree. The Commonwealth Court sitting en banc ruling unanimously disagreed. What the customers here presented was the testimony of Mr. Stephen Barron, their expert witness, who examined how the companies unbundled their rates during the first restructuring proceeding, and that included work papers, appendices, and various work schedules. And then it also reviewed how the companies treated line losses once the transmission rate caps expired. It conducted line loss analysis that showed that line losses were still part of the generation charge. They were being collected as part of the generation charge. The Commonwealth Court actually conducted a several-page analysis of the testimony, and it said that the companies failed to prove that they were actually collecting line losses in the transmission charge. Additionally, when the companies first introduced their transmission service charge rider after the expiration of the transmission caps before the PUC, they included more than 20 transmission costs approved by FERC that they sought to recover. At that time, they were paying line losses on an average basis, but they did not consider line losses to be a transmission cost, and they did not include it in that rider. They only included it once they figured out that their line loss cost would increase. But one of the major reasons that their line loss cost increased and the Commonwealth Court made that finding was because they had entered into supply agreements with their affiliates in generation affiliates in Ohio, and because the generation affiliates were actually located far from the customers in Pennsylvania, their line losses increased. But that was a management decision, just as it was a management decision to assume all the risk under the settlement agreement for increases, FERC or state increases in the retail caps, just as it was a management decision to extend the generation and transmission rate caps under the settlement agreement. Let's go back, if we might, and my colleagues will indulge me for a moment, to the point that Mr. Shepard was pressing very hard on us, which is that FERC has definitively decided this. There's no wiggle room, and in your briefing you said, and you've just repeated at the podium, no, they haven't definitively decided this. Explain to us why Atlantic City 2 and its comment about line loss and what, I think they said, quote, marginal losses are part of the payment for transmission service, unquote, is something we've had quoted to us by the other side. What is it that gives room for you to say there's still a basis on which to say this is not a transmission, it's a generation issue? The basis, Your Honor, is that those phrases are really extracted from various sentences, only I'd say surgically extracted. In the same decision, the FERC said that line losses directly affect and are part of the cost of generation. In fact, they're part of the locational marginal pricing formula that PJM uses to calculate the cost of generation. And where did they say that? What are you relying on for that? That's actually cited in the commonwealth court decision in the review of Atlantic City. It says marginal prices send the proper, and I'm referring here to the commonwealth court review of the Atlantic City decision, marginal prices send the proper price signals about the cost of obtaining generation. So your basis for saying FERC hasn't decided is what the commonwealth court said about what FERC said? We completely agree with the commonwealth court. We actually argued that, and that's on paragraph 61-862 of the Atlantic City decision. If we determine that there is issue preemption here, can the companies have waived that position? We believe what the companies should have done, and yes, we believe that. You believe that you can waive issue preemption? Yes. Can you waive field preemption? Yes, and let me go back to, I'd like to read to you Appellant Counsel's response to a very similar question. Okay, I don't need that. I just want to know, it's your position that if there is preemption, field preemption, issue preemption, or complete preemption, that that can have been waived by the companies? Yes, and the companies agreed during district court hearing on our motion to dismiss. On page 65 of the transcript, Judge Gardner asked that very same question. I will not read from it, but I have it here. And the companies said that yes, they can waive that in exchange for consideration. All the parties, the 16 parties to the settlement agreement, believe that. Maybe you better give me that cite. Okay, that's page 65 of the hearing transcript dated May 20, 2013. Is it in the joint appendix? The transcript is not in the joint appendix. It's the hearing, the transcript from the district court hearing. There was only one hearing dated May 20, 2013. And what was that page number? Page 65, and I have it here. Even if the line losses are for a jurisdictional quote, why won't or don't the companies also have the right to limit or forego that right of recovery as part of a voluntary contractual settlement agreement, end of the quote. The response was, and it's a long response, but the quote that I have is the parties do have the ability to agree upon a cap of those rates for a number of years, end of quote. Everybody agreed on this. The parties agreed that entered the settlement agreement. Again, 16 parties that entered the settlement agreement. The commission thought the same way when it approved the settlement agreement. The commonwealth court has reviewed a number of... So you're talking about nobody disputed that the parties could enter into a settlement agreement, but is there any place in that argument where your opponents agreed, yes, we can waive field preemption, we can waive... Issue preemption. Issue preemption. That question, specifically that question was not asked, but we believe it's implicit on their agreement to, and I would point to section D9 of the settlement agreement and sections F13 and F14 of the settlement agreement where they agree to forego increases in costs regardless of whether such increases are federal or state increases. That's the very basic concept upon which we enter into a settlement agreement. Okay. Thank you very much. Thank you. Do you want one minute to close? Thanks. Okay, we'll give you one more minute to close. One more minute, thank you, I appreciate that. Your Honors, we believe that the Full Faith in Credit Act and the issue and claim preclusions that are applied to it are mandatory. Courts may not create exceptions to issue and claim preclusion, as the U.S. Supreme Court has said in San Remo Hotel. Only Congress may do so by an express or partial repeal. There is no express or partial repeal of the Full Faith in Credit Act in the Federal Power Act. Congress has not spoken on that issue. It actually has not repealed the application of the Full Faith in Credit Act. And this Court may not just create an exception of the Full Faith in Credit Act. And so the only remaining question, we believe, is whether the Commonwealth Court had jurisdiction to review the federal and the state claim issues. We believe that the Commonwealth Court had jurisdiction. Contrary to what Appellant said here, they did not argue before the Commonwealth Court that the Commonwealth Court did not have jurisdiction to rule on the preemption issue. They asked the Commonwealth Court to agree with them on the preemption issue, just as it did with respect to the congestion cost two years earlier. But they did not go before the Commonwealth Court and said, you do not have jurisdiction to rule on the preemption issue. And because of that, we believe that this Court has to be guided by its decision in Delaware River Port Authority, which said that even if the state court decided the issue incorrectly, it remained for the Supreme Court of the state and ultimately the U.S. Supreme Court to correct any mistakes. The companies had their day in court. They requested petitions for review before the PA Supreme Court and the U.S. Supreme Court. They were denied. They did not get the chance to redo in the federal court system and repackage their claims and litigate them here. They could have reserved the federal questions under England preservation, as they did back in 1998 when the cases were litigated in state and federal court. And that's their federal preemption arguments pursuant to the restructuring agreement. They did not do that here. I think that's a good segue to the lead-in for the first question for Mr. Shepard. Thank you. Thank you very much. Mr. Shepard? If you let's assume that the Commonwealth Court was incorrect about the filed rate decision, does it make any difference? Because as your opponent just said, under Delaware River, you can ask a state court to answer federal questions. You did. It remains to go up to the Pennsylvania Supreme Court and then the U.S. Supreme Court. You did that. Having lost, why do you get a second bite at the apple? I believe that the phrase that she was struggling for was express or implied repeal. This is a phrase that the Supreme Court has used. How did you get around Delaware River? Because it's not a preemption case, Your Honor. It presented a federal question only because it was a bi-state compact that Congress had to approve. The quote from Delaware River, it is, state courts may answer federal questions, and if they do so erroneously, it remains for state appellate courts and ultimately the United States Supreme Court to correct any mistakes. It doesn't answer a federal question, Your Honor. It's not answering a federal question to just defy the federal law. You have maintained throughout this that this is a preempted area that is something that the PUC and the Commonwealth Court couldn't answer. They could not answer it at all. Not that they answered it wrong, but they could not answer it. Correct, Your Honor. That is exactly what we've been trying to say. This is not a question that they answered incorrectly. This is a question they were not allowed to answer at all. Did you or did you not address the merits to the Commonwealth Court? In other words, this is a little bit of a tough question because jurisdictional issues and merits issues are tied up together, but did you or did you not directly argue, hey, this is a transmission loss, not a generation loss to the Commonwealth Court? Your Honor, we argued that the PUC's decision was preempted, and importantly, the ground shifted. Remember, the PUC's holding is what you're hearing today, which is that they don't care. They said FERC has spoken, and we don't care. That is not what the Commonwealth Court said. The first thing I wanted to say when I stood up here is the theory you're hearing today is not even something the Commonwealth Court agreed with. The Commonwealth Court said, ugh, we've got Mississippi Power and Light to deal with, and we need to figure out whether or not this is going to be preempted. And what did they decide? Contrary to the language of Mississippi Power and Light, as later quoted in their due liaison and from Southern California Edison, they decided to say we don't see preemption here because we don't think FERC has spoken clearly. That is not the theory of the PUC. The ground has shifted, and that is a question I would argue under the traditional prongs of issue preclusion. We have not had an opportunity to fully or fairly litigate because that grounds for decision by the state court was not the same as the PUC's decision at all. Now, if you can, can you tell me whether or not you argued the merits to the Commonwealth Court? Yes, Your Honor. We argued that line losses cannot possibly be generation costs because FERC has held to the contrary. That is true as a matter of engineering and as a matter of law. So, yes, that is true. This is not a heads-I-win-tails-you-lose situation, really, Your Honor. It is a heads-we-all-win-if-a-state-follows-federal-law and tails-we-all-win-if-a-state-follows-federal-law. And here they just walked away with it. There was mention made of Exelon and VEPCO and also about the components of L&P. I am very happy that they raised the question of Exelon because Exelon actually explains a lot about why we are here. What happened in Exelon was two entities inside PJM got into a fight about how to classify congestion costs for the purpose of retail rate allocation. The same industrials who brought this action, again, who complained when we brought our case here, intervened in Exelon. They didn't like the answer that they got in Exelon. And what did they do? They filed a state rate case and had it litigated there. So the industrials have twice now waited in the weeds, let FERC decide something that they disagree with, and waited for a state proceeding and tried to get the state to decide it on a different ground. Equitably, this has really become a serious problem. The mischief that they are doing is rather dramatic. As to this question of L&P equaling generation, locational marginal price includes three components, generation, transmission line losses, and congestion costs. The associated property tells us that generation can't be line losses and it can't be congestion if it's a separate element. It just cannot be. Unless you agree to it in the settlement agreement. In other words, if you put that category in and somebody interprets it not the way you would like it to be interpreted, it's still... Well, Your Honor, what we agreed to in the settlement agreement was that we would cap our transmission rates for a period of time. That period of time elapsed. FERC issued an order saying we're changing from average to marginal transmission line losses. You're going to have to do this now. We filed a rate case after that transmission... How much money is involved in all this thing? $253 million in straight dollars. I think the carriage costs at this point have taken it significantly north of that. Maybe $275 million, $280 million. The company just had to book the loss. So it's a very substantial amount of money. I thank both counsel for very well presented arguments. I would ask counsel two things. One, could you submit to us by Wednesday, April 16th, by 4 p.m., a 10-page double-spaced supplemental memoranda on whether a party can waive issue or field preemption? Secondly, if you could get together and have a transcript, a pair to this oral argument, split the costs, if you would, and there's no urgency in necessarily getting that to us. Again, thank you very much. Well done. Thank you.